UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| BENJAMIN R. BENNETT, as General Partner, as Limited Partner, and as Executor and Testamentary Trustee of Estate of Duane H. Bennett, Sr., a limited partner and SARAH BENNETT KHAN, a limited partner<br><br>    Petitioners,<br><br>KINGDOM ENERGY RESOURCES, LLC, and<br>THE UNITED STATES OF AMERICA,<br><br>    Intervening Petitioners<br><br>V.<br><br>SUSAN BENNETT BASCOM, CHRISTOPHER G. BENNETT, CODY J. BENNETT, GEORGE BENNETT, MARY E. BENNETT, MELISSA BENNETT, MICHELLE N. BENNETT, STEPHEN B. BENNETT, WHITLEY DAVIS, ESTATE OF DUANE H. BENNETT, JR., through its executrix Deborah J. Bennett; CHELSEY V. HENSLEY, RANDALL W. LONG, AMANADA LONG MAYFIELD, FAIRANNA BENNETT RAINEY,<br><br>    Respondents. | CIVIL NO. 5:17-113-KKC<br><br><br><br><br><br><br><br>OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motions for summary judgment filed by the two intervening petitioners in the matter: the United States of America and Kingdom Energy Resources, LLC. (DE 17, 40.) In addition, before this action was removed, the respondents filed a motion for partial summary judgment in state court, which remains pending.

## I. Background

The issue on these motions is which group or entity should be awarded a little over $2 million currently being held in escrow pursuant to an order by the Fayette Circuit Court. The dispute over the funds is rooted in the 2006 death of Duane Bennett, Sr., who was the general partner of two limitedpartnerships: Black Star Land & Mining, Ltd. and Manalapan Land Company. The decedent owned a 40 percent partnership interest in each company. The 14 respondents were limited partners of the companies.

After his death, the IRS assessed federal estate tax liabilities against his estate totaling $2,783,848.74 (DE 17-3, Decl.) His estate made some payments to the IRS and the total amount of federal estate tax owed by the estate as of May 1, 2017 was $2,107,498.55. (DE 17-3, Decl.) Statutory additions for interest, penalties, and costs continue to accrue on the balance. (DE 17-3, Decl.)

The IRS recorded Notices of Federal Estate Tax Liens with the Bell and Harlan County Clerks in August 2010 and in May 2016, respectively, and Notices of Federal Tax Liens with the same counties in May 2016. (DE 17-3, Decl.)

In June 2015, the executor of the estate filed an action in Fayette Circuit Court asking for the appointment of a receiver to wind up the two companies' affairs. (DE 1-1, Petition.) The state court appointed a receiver who located a company that agreed to purchase all of the assets of the limited partnerships. (DE 40-2, Assset Purchase Agreement.) That buyer is one of the intervening petitioners in this matter: Kingdom Energy Resources, LLC.

Kingdom Energy did not purchase the ownership interests of the general partner or the limited partners. It purchased the assets of the limited partnerships. (DE 40-2, Asset Purchase Agreement.) Each partner was entitled to a portion of the

proceeds from the sale of those assets according to the partner's ownership interest. Certain of the limited partners moved the state court to distribute the proceeds of the asset sale to the limited partners according to their proportionate ownership interest in the companies. (DE 16-4 Jt. Mot. at CM-ECF p. 88.)

Because the decedent owned 40 percent of the companies, his estate under normal conditions would be entitled to 40 percent of the proceeds of the sale. Certain of the limited partners, however, objected to distributing any amounts to the estate, arguing that the estate owed "significant amounts of money in unpaid loans" to both of the limited partnerships "as evidence by each company's corporate records." (DE 16-4, Response at CM-ECF p. 99.) Specifically, these limited partners asserted that the estate still owed Manalapan $796,086.19 and that it owed Black Star $1,515,581.62 for a total debt of $2,311,667.81. (DE 16-4, Response at CM-ECF p. 99.) These limited partners argued that the estate's debt to the partnerships should be deducted or set off against the amounts otherwise due the estate from the sale proceeds. (DE 16-4, Response at CM-ECF p. 100.)

The state court ordered the receiver to distribute to all of the limited partners except the estate their share of the sale proceeds. (DE 16-4, Order at CM-ECF p. 24.) The court ordered that the estate's share of the sale proceeds should be held in an escrow account maintained by the receiver pending further court orders. (DE 16-4, Order at CM-ECF p. 24.) The amount held in escrow at the time of the briefing on these motions was $2,117,525. (DE 17-12, Mot. for Partial Summ. J. at 2.)

After the parties conducted discovery on the issue, certain of the limited partners argued again in a motion for partial summary judgment filed in state court that, before he died, the decedent borrowed roughly $1 million from each of the two limited liability companies. (DE 17-12, Motion for Partial Summ. J.) These partners

asserted that "there is no dispute between the parties that the Estate, but for the setoff, would be entitled to receive 40% of the remaining proceeds from the sale of the assets of the limited partnerships." (DE 17-12, Motion for Partial Summ. J. at 5.) The limited partners argued, however, that the "partnerships are entitled to a setoff for the full amount of the distribution held in escrow" for the money owed to the partnerships by the estate. (DE 17-12, Mot. at 1, 5.)

There was a problem, however, with the limited partners' argument. If the estate did owe debts to the limited partnerships as the limited partners contended in their motion for partial summary judgment, there was no dispute that Kingdom Energy bought those loans when it purchased the partnership's assets. (DE 40-2, Asset Purchase Agreement, at CM-ECF p. 178.) Kingdom Energy bought "all of the [partnerships'] assets, rights, obligations, and liabilities." (DE 40-2, Asset Purchase Agreement, § 2.1.) An exhibit to the agreement makes clear that this includes "[a]ny loans or promissory notes made payable to" the partnerships. (DE 40-2, Asset Purchase Agreement, Ex. B, ¶ 7.)

Thus, the estate would be required to pay the $2,311,667.81 debt to Kingdom Energy and not to the limited partners. As the estate pointed out in its response to the limited partners' motion for partial summary judgment, after the signing of the asset purchase agreement, the limited partnerships no longer had any right to collect on the loans to the decedent. The limited partnerships no longer owned the loans and, thus, could not collect on them. (DE 17-14, Response at 3.).

Perhaps in recognition of this problem, in their reply brief on the motion for partial summary judgment, the limited partners no longer argue that the roughly $2 million paid by the limited partnerships to the decedent constituted loans. Instead, they argue the payments to the decedent constituted "excessive distributions" to

4

which he was not entitled. The limited partners argue that, in this situation, Kentucky law requires "an equitable true up or offset prior to dissolution" to correct the overpayment to the decedent and to equalize the payments among the limited partners. (DE 17-15, Reply at 3.) In support of that argument, the limited partners cite a Kentucky statute providing that a "limited partnership's obligation to make a distribution is subject to offset for any amount owed to the limited partnership by the partner. . . ." KRS 362.2-507 (emphasis added).

Before the state court could resolve the issue of whether the estate's share of the sale proceeds should be distributed to the limited partners or to Kingdom Energy, the United States learned of the litigation and moved to intervene, arguing that the estate's share of the sale proceeds should be awarded to it to satisfy the estate's tax liabilities. The United States then removed the action to this Court.

Accordingly, there is now a little over $2 million being held in escrow pursuant to the state court's orders. Three groups or entities claim a right to it: the limited partners, the United States, and Kingdom Energy.

No party has filed a motion to remand the action to state court and each party has fully briefed in this Court its claim to the escrowed funds. This Court has jurisdiction of this action under 28 U.S.C. §§ 1442(a)(1), 1444, and 2410(1), (5). *See Martinez v. Republic of Cuba*, No. 10-22095-CIV, 2010 WL 11451793, at *2 (S.D. Fla. Nov. 19, 2010) ("This Court agrees with the United States that in certain circumstances the federal government, as an intervenor, may remove to federal court because a civil action is essentially brought 'against' it. As the cases the United States relies upon indicate, such circumstances exist where the United States has a pecuniary, property, or direct interest at risk."); *Marriage of Dyche & Beat v. United States,* No. CIV.A. 05-1116-WEB, 2005 WL 1993457, at *3 (D. Kan. Aug. 16, 2005)

(finding removal proper under 28 U.S.C. § 1442(a)(1) where the United States moved to intervene in a state-court action to protect its interest in collecting estate taxes).

## II. Analysis

### A. The limited partners' claim to the sale proceeds

The limited partners argue that the escrowed funds do not belong to the estate and never did. (DE 24, Mem. at 6.) They argue that that this Court must decide who owns the escrowed funds before it can determine whether the IRS has a right to the funds pursuant to the tax liens. (DE 24, Mem. at 7.) If this Court should determine that the estate does not have a right to the escrowed funds, then the IRS tax liens cannot attach to the funds. (DE 24, Mem. at 9.)

As discussed, the limited partners now argue that they have a right to a portion of the escrowed funds because the estate received "excessive distributions" that the limited partners did not receive. They argue that, under Kentucky law, they are entitled to an "equitable true up to account for the Estate's prior receipt of excessive funds." (DE 24, Mem. at 11.) According to the limited partners, "[w]here one partner, like the Estate, received significant payments that the other limited partners did not receive, equity requires an offset to equalize the payments among the limited partners." (DE 24, Mem. at 14.)

Of course, if the partnerships' payments to the deceased prior to his death were loans as the limited partners have also argued – and not distributions – then the limited partners would have no right to the estate's proceeds from the asset sale. Only Kingdom Energy has the right to collect on debt owed to the limited partnerships. The limited partners' claim to the funds rests solely on their argument that the roughly $ 2 million paid to the deceased by the partnerships before he died should be deemed "excessive distributions" that the deceased was not entitled to.

6

The sole evidence in the record – as the limited partners pointed out in their motion for partial summary judgment – is that the payments by the partnerships to the deceased were, in fact, loans. The limited partners point to no evidence that the payments were distributions.

With their motion for partial summary judgment filed in state court, the limited partners attached the affidavit of Sharon P. Warriner, a Certified Public Accountant and managing partner of an accounting firm hired by the deceased in 2004 to oversee and manage the accounting needs of the companies. She states that, prior to his death, the deceased "personally borrowed" $1,000,000 from Manalapan at an interest rate of 4.5 percent. Further, he signed a promissory note to that effect. (DE 17-12 at CM-ECF p. 12, Promissory Note.) Warriner states that the deceased made no payments on the note while alive but that, after his death, his estate made payments in August and October 2011 totaling $460,000.(DE 17-12, Warriner Aff. at CM-ECF p. 10.)

Warriner further states that, prior to his death, the decedent "personally borrowed" $1,170,331.00 from Black Star. She further states that she believes the deceased executed a promissory note with regard to this debt but that it has not been located in the partnership's records. She states the debt has been carried as an interest-bearing note receivable on the partnership's books since 2007 and that the estate made one payment toward the debt in October 2011. (DE 17-12, Warriner Aff. at CM-ECF p. 9; DE 17-12, Mem. at 3.)

With their motion for partial summary judgment, the limited partners also submitted the affidavit of Sandra Wilson, who served as the controller for the partnerships. (DE 17-12, Wilson Aff. at CM-ECF p. 13.) She states that the payments to the deceased were carried as notes receivable for both partnerships.

She sent letters on behalf of both partnerships to the estate's executor demanding payments toward the loans. (DE 17-12, Letters at CM-ECF p. 18-19, 23.)

In its response filed in state court to the limited partners' motion for summary judgment, the estate acknowledged the loans and that the books and records of Manalapan reflected an account receivable from the estate of $540,000 in principal and $256,086.19 in interest for a total debt to that partnership of $796,086.19. The estate further acknowledged that the books and records of Black Star reflected an account receivable from the estate of $1,156,331.50 in principal and $359,250.12 in interest for a total debt to that partnership of $1,515,581.62. (DE 17-14, Estate Mem. at CM-ECF p. 2.)

In fact, in their motion for partial summary judgment filed in state court, the limited partners asserted that any argument that the debts were invalid or nonexistent should be estopped. In support of that argument, they pointed to the testimony of the estate's executor acknowledging that the payments constituted a debt owed by the estate to the limited partnerships. (DE 17-12, Mem. at CM-ECF p. 6.)

While the limited partners now argue in their pleadings filed in this Court that the payments to the decedent should be viewed as distributions rather than loans, they cite no evidence that the payments were distributions. Instead, the limited partners simply point to evidence that money was transferred from the limited partnerships to the decedent prior to his death. (DE 24, Mem. at 12) The limited partners do not address the ample evidence in the record – submitted by them – that the payments constituted loans.

Because the only evidence in the record indicates that the payments to the deceased by the limited partnerships prior to his death were loans to him and not

8

distributions, the Court cannot find that the limited partners themselves are entitled to any portion of the escrowed funds. The only entity that can recover the estate's debts to the partnerships now is Kingdom Energy. For this reason, the limited partners are not entitled to the escrowed funds and their motion for partial summary judgment must be denied.

This means that either the IRS or Kingdom Energy has a right to the estate's portion of the proceeds from the sale of the partnerships' assets. The estate owes Kingdom Energy for the balance of the notes owed to the limited partnerships. It owes the IRS for unpaid taxes. The remaining issue is which of these two entities is entitled to the estate's escrowed funds in satisfaction of the debts the estate owes them.

Before reaching that issue, however, the Court must address the limited partners' motion to disqualify Kingdom Energy's current counsel. Throughout the briefing on the limited partners' motion for partial summary judgment and the United States' motion for summary judgment, Kingdom Energy was represented by attorney Darrell Saunders (DE 40). After Kingdom Energy filed its own motion for summary judgment, however, and before briefing on that matter was completed, Saunders moved to withdraw from representing Kingdom Energy (DE 54). Later, four attorneys employed by the law firm Miller, Griffin & Marks, P.S.C. entered their appearance on behalf of Kingdom Energy Resources, LLC. (DE 57-60, Notices.)

All of the limited partners then moved to disqualify (DE 64) all attorneys affiliated with Miller, Griffin & Marks from representing Kingdom Energy in this matter. In the motion, the limited partners explain that one of the attorneys who entered his appearance on behalf of Kingdom Energy – William T. Forester – had previously represented the limited partnerships and the receiver in negotiating and

drafting the asset purchase agreement pursuant to which Kingdom Energy purchased the partnerships' assets.

The Court will not resolve this issue. The only brief that Miller, Griffin & Marks has filed in this matter is Kingdom Energy's reply brief on its own motion for summary judgment. The Court has not considered that brief in ruling on the limited partners' claim to the escrowed funds. The Court has considered the reply brief in ruling only on the dispute between the IRS and Kingdom Energy over which of those entities is entitled to the escrowed funds.

The only parties that have moved to disqualify Miller, Griffin & Marks are the limited partners. The IRS has not objected to Kingdom Energy's new counsel. Accordingly, the Court having determined that the limited partners have no right to the escrowed funds, will deny as moot their motion to disqualify Kingdom Energy's new counsel.

**B.     The United States' and Kingdom Energy's claims to the sale proceeds**

The United States argues that its tax liens on the escrowed funds are superior to any claim by Kingdom Energy to the proceeds. Kingdom Energy argues, however, in its motion for summary judgment that the estate's 40 percent ownership interest in the limited partnerships serves as collateral on the loans to the decedent, which it purchased. It further argues that it has already foreclosed on the estate's 40 percent interest, which means it has a right to 40 percent of the sale proceeds free and clear of the tax liens.

Kentucky Energy asserts it accomplished this foreclosure by way of the "strict foreclosure" procedure outlined in Article 9 of Kentucky's version of the Uniform Commercial Code. Under that procedure, a secured party may accept secured

collateral to satisfy a debt under certain conditions. KRS § 355.9-620(1). One of those conditions is that the debtor consents to the secured party taking the collateral to satisfy his debt. KRS § 355.9-260(1)(a).

The debtor may explicitly consent or he may be deemed to have implicitly consented under two conditions. First, the secured party must send a proposal to the debtor after the debtor's default proposing to accept the collateral in full satisfaction of the debt. KRS § 355.9-260(3)(b)(1),(2). Second, the debtor must not receive an objection "authenticated by the debtor" within 20 days after the proposal is sent. KRS § 355.9-260(3)(b)(3). The estate did not explicitly consent to Kingdom Energy taking the collateral to satisfy the debt. Kingdom Energy argues, however, that the estate implicitly consented.

It argues that it sent the required proposal by way of a letter dated January 20, 2017 to the estate's executor and to its counsel, Charles J. Lisle. The letter stated, Kingdom Energy "unconditionally accepts the Pledged Collateral in full and final satisfaction of the attached Promissory Note." (DE 40-7, Jan. 20, 2017 letter.) The letter defined the Pledged Collateral as the deceased's partnership interest in the two partnerships.

The promissory note attached to the January 20, 2017 letter was the promissory note by which the deceased promised to repay Manalapan Land Company, Ltd. $1,000,0000. (DE 40-7 at CM-ECF p. 3, Note.) The letter further stated that, as additional consideration Kingdom Energy "releases and forgives the debt owed pursuant to the Black Star Note/loan by the Debtor." Accordingly, with the letter Kingdom Energy purported to assume ownership of the estate's 40 percent interest in both partnerships in full satisfaction of the estate's debt.

11

No party disputes that the estate was in default at the time that Kingdom Energy sent the estate the January 20 2017 letter. Nor does any party dispute that the deceased's ownership interest in the partnerships served as collateral for the loans. In the promissory note, the deceased agreed that the loan is "collateralized by [his] stock of [Manalapan], as well as other affiliated company stock" owned by him. (DE 40-5, Promissory Note.) Accordingly, for purposes of the United States' and Kingdom Energy's motions for summary judgment, the Court assumes that the estate was in default on the loans on January 20, 2017 and that the deceased's ownership interest in the partnerships served as collateral for the loans.

In its response, the United States argues that the estate did not consent to Kingdom Energy's acceptance of the collateral to satisfy the debt as the statute requires. It submits evidence that Kingdom Energy sent the January 20, 2017 letter by e-mail to the estate's counsel Lisle on Friday, January 20, 2017 and that Lisle responded by e-mail on the following Monday, January 23, 2017. In the e-mail, Lisle stated, "Your statement in the January 20 letter that Kingdom is accepting the collateral (rather than proposing to accept the collateral) is premature and beyond its abilities as a purported creditor." (DE 40-9, Jan. 23, 2017 e-mail.)

Kingdom Energy argues that attorney Lisle's response does not constitute an "authenticated objection." (DE 40, Mem. at 5.) Kingdom Energy does not elaborate on this argument in the motion. It points out that Lisle's e-mail in response to the January 20, 2017 letter states, "I will send you a more detailed response on behalf of the Estate in a few days." (DE 40, Mem. at 5; DE 40-9, Jan. 23, 2017 e-mail.) It does not appear that Lisle ever sent a more detailed response. Regardless, Lisle's e-mail stated the proposal contained in the January 20, 2017 letter was "premature and

beyond [Kingdom Energy's] abilities as a purported creditor." (DE 40-9, Jan. 23, 2017 e-mail.)

An objection to strict foreclosure under Article 9 does not require any "magic words." *Blakely v. Tri-Cty. Fin. Grp., Inc.*, No. 08 C 3783, 2010 WL 1286856, at *6 (N.D. Ill. Mar. 29, 2010) "Any language that manifests an intention to reject the proposal of the creditor to retain possession of the collateral in satisfaction of the debt satisfies the requirements of the Uniform Commercial Code." 68A Am. Jur. 2d Secured Transactions § 589. Lisle's e-mail manifested an intent to reject Kingdom Energy's proposal. It cannot be interpreted in any other manner.

As to whether the objection was "authenticated," Article 9 defines the verb "authenticate" as "[t]o sign" or "[w]ith present intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol, or process." KRS § 355.9-102 (g). Article 9 does not define the term "sign" but Article 1 defines "signed" similar to how Article 9 defines "authenticate," as including "using any symbol executed or adopted with present intention to adopt or accept a writing." KRS. § 355.1-201(ak).

Lisle's e-mail objecting to Kingdom Energy's proposal was sent in response to an e-mail directed to him as attorney for the estate. After articulating an objection to the proposal, Lisle typed his name on the response e-mail. By hitting the send button, Lisle intended to presently authenticate and adopt the content of the e-mail as his own writing.

Thus, Kingdom Energy received a timely objection authenticated by the estate within 20 days after it sent the proposal to accept the estate's ownership

13

interest in the partnerships to satisfy the debt. For this reason, the estate cannot be deemed to have consented to the proposal.

Kingdom Energy argues that the IRS should not be permitted to argue that the estate objected to the proposal. It argues that only the estate can make that argument. (DE 68, Reply at 14.) Kingdom Energy cites no law in support of that argument. The strict foreclosure statute provides the "only" manner by which a secured party may accept collateral in satisfaction of the debt. KRS § 355.9-620(1). One condition explicitly set forth is that the debtor consents to the acceptance. KRS § 355.9-620(1)(a). The estate did not consent and, thus, under the plain language of the statute, the attempt at strict foreclosure was not effective.

Kingdom Energy nonetheless still has a valid claim to the estate's proceeds from the asset sale because the estate owes Kingdom Energy for the loans to the decedent. Likewise, the IRS has a valid claim to the estate's sale proceeds because the estate owes federal taxes. The question remains as to which of these two entities should receive the estate's escrowed proceeds as payment toward the estate's debt.

Because the escrowed funds belong to the estate, the federal tax lien has attached to them. 26 U.S.C. § 6321. Nevertheless, "[f]ederal tax liens do not automatically have priority over all other liens." *U.S. By andThrough I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993). "The priority of the federal tax lien against competing claims is governed by federal law." *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000).

Under federal law, the tax liens are not valid against any "holder of a security interest" until the IRS files a notice that meets the statute's requirements. 26 U.S.C. § 6323(a). The IRS filed the required notice with respect to the sale proceeds on May 9, 2016. Thus, the IRS liens against the sale proceeds are not valid

against any "holder of a security interest" in the proceeds that existed prior to May 9, 2016.

The statute defines a "security interest" to exist when the interest "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1). Courts have generally interpreted this to mean that a holder of a security interest has "priority over a tax lien only if the security interest is perfected before the IRS has filed notice of its lien in the proper location." *Bank of Mt. Vernon v. United States*, No. CIV. A. 81-53, 1987 WL 9100, at *1 (E.D. Ky. Feb. 4, 1987). This is because a perfected security interest is protected against a subsequent judgment lien. *Id.*; United *States v. Trigg*, 465 F.2d 1264, 1270 (8th Cir. 1972).

Kingdom Energy does not argue it has a security interest in the sale proceeds. It argues it has a security interest in the estate's ownership interest in the limited partnerships. With regard to that security interest, Kingdom Energy argues it is a protected "holder of a security interest" as that term is defined under 26 U.S.C. § 6323(h)(1).

Kingdom Energy does not dispute that it has not perfected that interest but it argues that perfection of this particular kind of security interest – a security interest in the debtor's partnership interest – is not required to qualify as a "holder of a security interest" under the statute. Citing to a provision in Kentucky's version of the Uniform Limited Partnership Act, Kingdom Energy argues that a creditor cannot obtain a judgment lien on a debtor's partnership interest. *See* KRS § 362.2-703. Thus, it argues, even without perfection, a security interest in a debtor's partnership interest is always protected against a subsequent judgment lien as required to qualify as a "holder of a security interest" under the statute.

15

The IRS, however, has a tax lien against the sale proceeds themselves. In determining whether that tax lien is valid under 26 U.S.C. § 6323(a), the question is whether Kingdom Energy has a competing security interest in the proceeds themselves. It does not and, accordingly, judgment will be entered in favor of the United States.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the limited partners' motion for partial summary judgment filed in state court prior to the removal of this action is DENIED;

2) the limited partners' motion (DE 64) to disqualify Kingdom Energy's new counsel is DENIED as moot;

3) Kingdom Energy's motion for summary judgment (DE 40) is DENIED;

4) the United States' motion for summary judgment (DE 17) is GRANTED; and

5) A separate judgment will be entered in accordance with this opinion and order.

Dated March 26, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY